UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FREDA M. BORDES, *et al.*                    CIVIL ACTION

VERSUS                                        NO. 20-1990

MICHAELS STORES, INC.*, et al.*              SECTION M (4)

## ORDER & REASONS

Before the Court is a motion for summary judgment filed by defendants Michaels Stores, Inc. ("Michaels") and Safety National Casualty Corporation ("Safety National") (together, "Defendants").[1]  Plaintiffs Freda M. Bordes ("Bordes") and Norman P. Bordes (collectively, "Plaintiffs") respond in opposition.[2]  Defendants and Plaintiffs both reply in support of their respective positions.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion.

## I.       BACKGROUND

This case involves a trip-and-fall accident in a crafts store.  Bordes alleges that on May 17, 2019, she and a friend went shopping at a Michaels store in Metairie, Louisiana.[4]  Bordes and her friend walked down the main aisle of the store stopping along the way to examine items of interest.[5]  While Bordes and her friend were looking at cart toppers, Bordes allegedly stepped on a low, thin box, which caused her left foot to slide out.[6]  Bordes then lost her balance and fell.[7]  Bordes alleges

---

[1] R. Doc. 40.
[2] R. Doc. 44.
[3] R. Docs. 53; 56.
[4] R. Doc. 1-1 at 2.
[5] *Id.*
[6] *Id.*
[7] *Id.*

1

that the box on which she stepped "was part of a floor display of merchandise, consisting of low, thin, boxes, which had been placed directly on the floor, and in the main aisle."[8]

Plaintiffs filed this action in Louisiana state court alleging that Michaels's negligence caused Bordes's accident.[9]  Michaels removed the action to this Court alleging diversity subject-matter jurisdiction under 28 U.S.C. § 1332.[10]  After removal, Plaintiffs filed their first amended complaint adding Safety National, Michaels's liability insurer, as a defendant.[11]

## II.    PENDING MOTION

Defendants move for summary judgment arguing that Plaintiffs cannot sustain a claim for merchant liability under either factual scenario they assert.[12]  Defendants point out that Bordes and her friend, Autumn Rose, tell different stories, but neither is sufficient to hold Michaels liable.[13] Bordes testified at her deposition on May 13, 2021, that she and Rose were looking at cart toppers displayed on a shelf, when she took a step backwards and tripped on a display of boxes that scattered around her when she fell.[14]  Bordes stated that she did not trip on cart toppers.[15]  Rose, on the other hand, testified at her March 7, 2022 deposition that Bordes stepped backward and fell over a stack of three cart toppers that are each about one-and-one-fourths inches tall.[16]  Rose further testified that she saw the cart toppers on the floor only after Bordes fell.[17]  Defendants argue that if Bordes's story is believed, Plaintiffs cannot prevail on their claims because the display would have been open and obvious, and thus, not unreasonably dangerous.[18]  Defendants also argue that,

---

[8] *Id.*
[9] *Id.* at 3.
[10] R. Doc. 1 at 1.
[11] R. Doc. 13.
[12] R. Doc. 40.
[13] R. Doc. 40-1 at 1-18.
[14] R. Doc. 40-5 at 4-6; 8-10.
[15] *Id.* at 11.
[16] R. Doc. 40-6 at 7-10.
[17] *Id.* at 10.
[18] R. Doc. 40-1 at 8-11.

even if Rose's version of events is credited, Plaintiffs cannot prove that Michaels knew or should have known of an unreasonably dangerous condition.[19]

In opposition, Plaintiffs argue that there are disputed issues of fact that preclude summary judgment.[20]  Plaintiffs adopt Rose's version of the facts, arguing that Bordes fell on three small cart topper boxes that were stacked on the floor.[21]  Plaintiffs argue that Michaels created this cart topper display two-to-three weeks before the accident and failed to keep it stacked to a sufficient height so that it would be open and obvious.[22]  Plaintiffs contend that Michaels has no evidence that the cart topper display was built to company standards.[23]  Moreover, Plaintiffs argue that Michaels places overstocked items in the aisle, which would explain why the cart toppers were there.[24]

Defendants reply arguing that the overwhelming evidence, including Bordes's own testimony, establishes that Bordes did not fall on cart toppers, and the Court should not credit Rose's testimony to the contrary.[25]  Defendants argue further that Plaintiffs cannot establish that Michaels created the alleged display of cart toppers because there were no company instructions to create such a display and the incident report states that Bordes fell over a "stack-out" that was placed in the aisle as directed by the corporate office.[26]  Further, Michaels's employees testified that there was never a display of cart toppers on the floor, and they routinely monitored the floor for hazards to ensure that everything was in its place.[27]  Thus, argue Defendants, the display could not have been cart toppers at all, much less only three of them, which would be far below company

---

[19] *Id.* at 11-17.
[20] R. Doc. 44 at 1-21.
[21] *Id.* at 3-14.
[22] *Id.* at 7-8.
[23] *Id.* at 9-11.
[24] *Id.* at 15-17.
[25] R. Doc. 53 at 2-3.
[26] *Id.* at 3-6.
[27] *Id.* at 7-8.

standards.[28]  Finally, Defendants argue that Plaintiffs have no evidence that the alleged cart topper display was created by Michaels or that its employees failed to replenish it.[29]  Instead, Defendants argue that to arrive at such a conclusion the Court would have to make the following unreasonable inferences: that Michaels made the cart topper stack-out that was not called for in corporate instructions and never done; that a substantial number of cart toppers were sold that day and all taken from the floor display instead of the shelf; and that every Michaels employee failed to replenish the display.[30]  Moreover, Defendants argue that even if the Court made these inferences, Plaintiffs still have no evidence that Michaels had actual or constructive knowledge that the display had been depleted to the point of becoming a dangerous obstacle.[31]

In their surreply, Plaintiffs address arguments purportedly related to the deposition testimony of their safety expert.[32]  They argue that Rose's "*belief* that the Michaels' display of 3 cart topper boxes was on the floor because these cart topper boxes would not fit on the regular display" is not speculation but is based on her firsthand knowledge.[33]  Plaintiffs also insist that Bordes was not walking backwards when she slipped and that whether there was a cart topper display and how long it was there are contested issues of material fact precluding summary judgment.[34]

## III.   LAW & ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[28] *Id.*
[29] *Id.* at 6-9.
[30] *Id.* 7-8.
[31] *Id.* at 8.
[32] R. Doc. 56.
[33] *Id.* at 2 (emphasis added).
[34] *Id.* at 3-4.

any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*.  A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact.  *Id*. at 323.  If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact.  *Id*. at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material.  *Id*.  Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *EEOC v. Simbaki, Ltd*., 767 F.3d 475, 481 (5th Cir. 2014).  Unsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment.  *See Anderson*, 477 U.S. at 249-50; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).  In ruling on a summary-judgment motion, a court may not resolve credibility issues or weigh evidence.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008).  Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*,

572 U.S. 650, 656-57 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

After the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must articulate specific facts showing a genuine issue and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary-judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(1)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

**B. Premises Liability**

Under Louisiana law, "[a] merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition." La. R.S. 9:2800.6(A). "This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage." *Id.* To prove a negligence claim against a merchant in a trip-and-fall case, the plaintiff must prove all the following:

> (1) The condition [existing in or on a merchant's premises alleged to have caused the fall] presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

6

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. …

La. R.S. 9:2800.6(B); *Davis v. Wal-Mart Stores, Inc.*, 774 So. 2d 84, 90 (La. 2000) (citing *Smith v. Toys "R" Us, Inc.*, 754 So. 2d 209 (La. 1999)).  "Failure to prove any one element negates a plaintiff's negligence action."  *Martin v. Boyd Racing, L.L.C.*, 681 F. App'x 409, 411 (5th Cir. 2017).

Defendants argue that Plaintiffs cannot prevail under either factual scenario posed by the competing versions of events related by Bordes and Rose.[35]  According to Defendants, if the accident occurred as Bordes testified and she tripped over a stack-out display that was not cart toppers, then the condition did not present an unreasonable risk of harm because it was open and obvious.[36]

"An unreasonable risk of harm is present if the dangerous condition would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances."  *Taylor v. Wal-Mart Stores, Inc.*, 2006 WL 1476031, at *2 (W.D. La. May 23, 2006) (citing *Lasyone v. Kansas City S. R.R.*, 786 So. 2d 682 (La. 2001)).  Louisiana courts apply a risk-utility balancing test to determine whether a condition presented an unreasonable risk of harm.  *Martin,* 681 F. App'x at 411.  The four factors are: "(1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature."  *Bufkin v. Felipe's La., L.L.C.*, 171 So.

---

[35]  R. Doc. 40-1 at 5.  The Court recognizes that Plaintiffs have now adopted Rose's version of events in their opposition memorandum, R. Doc. 44 at 3-14, and urge in their surreply that Michaels had actual knowledge of the cart toppers in the aisle.  R. Doc. 56 at 4.  However, in an abundance of caution, the Court addresses both versions of the events.
[36] R. Doc. 40-1 at 8-11.

3d 851, 856 (La. 2013).  "A potentially dangerous condition that is open and should be obvious to

all is not unreasonably dangerous, and the merchant has no duty to protect against it."  *Taylor*,

2006 WL 1476031, at *2 (citing *Pitre v. La. Tech Univ.*, 673 So. 2d 585 (La. 1996)).  To that end,

open and obvious store aisle displays do not pose an unreasonable risk of harm because any

customer would reasonably expect to encounter such a display and it would be plainly visible.  *Cf.*

*id.* (observing that a pallet filled with merchandise in the center of an aisle presents no inherent

hazard to a customer exercising reasonable care) (citing *Reed v. Home Depot, Inc.*, 843 So. 2d 588

(La. App. 2003)).

Defendants present summary-judgment evidence showing that the stack-out displays in the

Michaels store at the time of the accident were open and obvious.  Assistant manager Jessica

Delaune testified at her deposition that a stack-out is "high enough that it is visually appealing to

customers and they would shop it from its current location."[37]  Indeed, said Delaune, Michaels's

standard for its stack-out displays was to keep them at least four feet high.[38]  Store manager Cheri

Puckett confirmed that Michaels's corporate office issued monthly stack-out directions to its

stores, and the Metairie location followed those specifications.[39]  Plaintiffs have presented no

evidence that Michaels did not follow these guidelines for setting up and maintaining its stack-out

displays.  Thus, if Bordes tripped over a stack-out display that was not cart toppers, it was an open

and obvious condition that was not unreasonably dangerous.

On the other hand, examining Rose's version of the accident (*viz.,* that Bordes fell over

three cart toppers placed on the floor in the main aisle), there is no evidence that Michaels had

---

[37] R. Doc. 40-7 at 21.
[38] *Id.* at 19.
[39] R. Doc. 40-8 at 1.  To be sure, the stack-out directions for the period including the date of the accident call
for nine displays, as pictorially depicted, that would be open and obvious.  *Id.*

actual or constructive knowledge of the condition.[40]  Michaels's employees testified that they followed the corporate guidelines in setting up stack-out displays that were at least four feet in height.[41]  Michaels's replenishment manager, Summer Cosgrove, testified at her deposition that cart toppers were not put on display in the aisle.[42]  Further, Susan Cambre, a Michaels employee who was working on the day of the accident, testified at her deposition that employees constantly monitor the condition of the store to ensure that merchandise is not out of place.[43]  Plaintiffs have presented no evidence to controvert this testimony.[44]  Thus, there is no evidence that Michaels created a display of cart toppers in the aisle or subsequently failed to properly maintain one; nor is there evidence that Michaels had actual knowledge of the three cart toppers said to be on the floor in the aisle.

Moreover, there is no evidence that Michaels had constructive knowledge of the cart toppers in the aisle.  A merchant has constructive notice if a plaintiff proves "that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care."  La. R.S. 9:2800.6(C)(1).  The Louisiana supreme court has stated that a plaintiff in a premises liability claim involving a merchant must make a positive showing that the hazardous

---

[40] R. Doc. 40-1 at 5.

[41] R. Docs. 40-7 at 19; 40-8 at 1.

[42] R. Doc. 40-9 at 5-6.

[43] R. Doc. 40-10 at 5-6.

[44] Plaintiffs argue that it is possible that Michaels's employees placed overstocked cart toppers on the floor. R. Doc. 44 at 16.  In support, they cite Rose's assumption that this occurred because the shelf stocking the cart toppers was full.  *Id.*  And in their surreply, Plaintiffs insist that Rose's testimony was based on her personal observation, not speculation.  R. Doc. 56 at 2.  But, Rose, who did not work at Michaels and does not contend she was there when the cart toppers were placed in the aisle, cannot have had any firsthand knowledge that they were put in the aisle by a Michaels employee as part of a display or otherwise.  In fact, she did not even notice them until after Bordes's fall.  Plaintiffs also cite the deposition testimony of store manager Bruce Vermilyea for the proposition that overstocked items are placed in the aisle.  R. Doc. 44 at 16.  But Plaintiffs mischaracterize Vermilyea's testimony.  Reading his testimony in context, Vermilyea testified that overstocked items are usually placed around the perimeter of the store or in the stockroom, but sometimes they are added to existing stack-outs of the same product.  R. Doc. 44-8 at 4.  Vermilyea did not say, as Plaintiffs imply, that any overstocked product was placed in the aisle.  Thus, neither Rose's assumption nor Vermilyea's deposition testimony establishes that the cart toppers were placed on the floor by Michaels either as a stack-out display or because they were overstocked.

condition existed for some time prior to the accident.  *White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081, 1084 (La. 1997).  "A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute."  *Oliver v. Belle of Orleans, LLC*, 2022 WL 1052526, at *4 (La. App. Apr. 8, 2022).  In this case, Plaintiffs have not presented any evidence positively establishing how the cart toppers got into the aisle or how long they were there, much less that they were there for such a length of time as would reasonably require Michaels to have discovered them.  Cambre testified that Michaels's employees continually monitor the condition of the store.  There is no evidence that they failed to do so on the day of the accident.  Thus, Plaintiffs have not carried their summary-judgment burden of showing either actual or constructive notice of the alleged hazardous condition.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion for summary judgment (R. Doc. 40) is GRANTED.

New Orleans, Louisiana, this 15th day of April, 2022.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE